## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALLEXIS FOST          :
    Plaintiff         :    Case No. 5:21-cv-03262
             :
   v.            :    Jury Trial Demanded
             :
CHARLES KENNEDY, US LEASING LLC and : 
HMD TRUCKING, INC.      :
    Defendants       :

## ORDER

AND NOW, this _____ day of _____, 2022, upon review and

consideration of Plaintiff's Motion to Compel and Defendants' Response thereto,  it is hereby

ORDERED and DECREED that said Motion is DENIED.

BY THE COURT:

_____

John M. Gallagher
United States District Judge

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEXIS FOST | : | |
|     Plaintiff | : | Case No. 5:21-cv-03262 |
| | : | |
|   v. | : | Jury Trial Demanded |
| | : | |
| CHARLES KENNEDY, US LEASING LLC and | : | |
| HMD TRUCKING, INC. | : | |
|     Defendants | : | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Defendants HMD Trucking, Inc. ("HMD") and Charles Kennedy, by and through their attorneys, Fowler Hirtzel McNulty and Spaulding, respectfully file this Response to Plaintiff's Motion to Compel (Doc. 62) (the "Motion") and request a protective order precluding such discovery. Four discovery requests are the subject of Plaintiff's Motion—Request Nos. 1, 9, 14, and 16 of Plaintiff's Request for Production of Documents Set IV ("RPD Set IV"). HMD has produced the documents that are the subject of Request No. 16. The remaining requests exceed the scope of permissible discovery under Fed. R. Civ P. 26(b)(1). Further, Plaintiff waived her right to file a motion to compel responses to Nos. 1 and 14.

### I.    Plaintiff Waived the Right to File a Motion to Compel Relating to Request Nos. 1 and 14.

Plaintiff's Motion to Compel production of documents in response to Request Nos. 1 and 14 of RPD Set IV is not timely and Plaintiff has waived the right to seek discovery of the videos and documents which are the subject of these requests.

1

Specifically, in paragraph 8 of the Motion to Compel, Plaintiff requests that this Honorable Court compel HMD to produce 11 months of videos from the Netradyne system regarding Defendant Charles Kennedy in response to Request No. 1. However, on February 21, 2022, Plaintiff served Defendants with similar requests in Request for Production of Documents (Set III) and Defendants served timely objections.[1]  Thereafter, on March 24, 2022, Plaintiff's attorney sent a letter to this Honorable Court (Doc. 40) requesting that Defendants' objections to Plaintiff's Request for Production of Documents (Set III) be overruled. In the letter, Plaintiff specified that she had "requested information about Charles Kennedy's driving alerts video tracking, and driver's scores . . ." . See pg. 2 of Doc. 40. Undersigned counsel responded to said letter on March 25, 2022 (Doc. 42), explaining to this Honorable Court why Plaintiff's request for all such videos was overbroad and unduly burdensome. After a phone conference with the parties, this Honorable Court issued a scheduling order on April 22, 2022, ordering that any Motion to Compel regarding "any outstanding discovery disputes" be filed by May 6, 2022. (Doc. 57).

Plaintiff did not file a Motion to Compel on or before May 6th. Instead, on or about May 10, 2022, Plaintiff served Defendants with RPD Set IV. Although worded slightly differently, the request was substantially similar to the prior requests for 11 months of Netradyne video regarding Charles Kennedy.

Similarly, in paragraph 9 of the Motion, Plaintiff is also requesting that this Honorable Court compel Defendant HMD to produce "any and all documents regarding any accidents involving vehicles owned by and/or leased by the Defendant, HMD Trucking Inc., for a period three years prior to and including the date of the accident." This request was made in Request No.

---

[1] *E.g.,* "8. Any and all documents related to any alert notifications, alerts, in cab audio alerts, alert description, video saved alerts, "driver caused alerts", Third party caused alerts, live feed alerts, driver report alerts, violation alerts, sign violations, relative speeding violations, driver distraction violations, Hard turn violations, collision warning violations, severe risk violations, for Defendant, Charles Kennedy's, from 2019 through October 2020."

2

14 of RPD Set IV. However, an identical request was made in Plaintiff's Request for Production of Documents (Set I) at request number 63.[2]

In addition to the reasons discussed below, Plaintiff's Motion to Compel should also be denied because Plaintiff waived the right to file a Motion to Compel production of the aforementioned documents/videos. Indeed, any such Motion to Compel was due on or before May 6th. In an attempt to avoid the consequences of not timely filing a Motion, Plaintiff served Defendant HMD with duplicative discovery requests (Request for Production of Documents Set IV). When Defendants raised the same objections that had been asserted to the prior discovery requests, Plaintiff filed a letter with this Honorable Court (Doc. 60) claiming that a new discovery dispute had arisen. A new scheduling order was subsequently issued by this Honorable Court.

Request Nos. 1 and 14 of RPD Set IV are a blatant attempt to make an end run around this Court's prior discovery motion deadline and this Court should not permit it. This Court should find that Plaintiff has waived the right to file a motion to compel the documents requested in those requests, deny Plaintiff's Motion as its pertains to those requests, and enter a protective order in favor of Defendants.

## II.    Response to Plaintiff's Motion to Compel

HMD and Kennedy respond to each of Plaintiff's numbered paragraphs as follows:

<u>Plaintiff's Introductory Paragraphs</u>

1.    Admitted in part, denied in part. It is admitted that this matter is a personal injury case arising out of an accident that occurred on September 24, 2020. It is also admitted that the truck being operated by Defendant Kennedy was equipped with a dash camera system sold by

---

"63. Any and all documents regarding any accidents involving vehicles owned by and/or leased by the Defendant, HMD Trucking Inc., for a period three years prior to and including the date of the accident."

Netradyne, Inc. that recorded video of the accident. The videos of the accident show how the accident occurred and no response to Plaintiff's factual averments regarding how the accident occurred is necessary.

2.     Plaintiff's Amended Complaint, as a written document, speaks for itself. In its answer, HMD has denied all allegations that it negligently entrusted to Kennedy a motor vehicle. (Doc. 19). No further response is necessary.

3.     Denied.  As stated in the parties' email to the Court on May 5, 2022, Plaintiff and HMD resolved their discovery dispute regarding Plaintiff's punitive damages discovery after Plaintiff agreed to narrow its requests. HMD provided responses to the punitive damages discovery.  Charles Kennedy's responses to Plaintiff's punitive damages discovery are not a subject of Plaintiff's Motion and, in any event, are forthcoming.

4.     Admitted in part, denied in part.  It is admitted that HMD employed the Netradyne System (a dash camera) that recorded various data and would register "events" under certain circumstances.  HMD denies that it received real-time alerts from Netradyne of any "events" or "violations" by its drivers.  Instead, as testified to by HMD's corporate designee, Netradyne's algorithm calculates a "score" for each driver. At the time of the accident at issue in this case, at the end of each month HMD would access the Netradyne system and review each driver's Netradyne monthly Netradyne score. When a driver's "score" dropped below a certain threshold, HMD would select a few videos, call the driver, and use the videos during a coaching session with the driver.  (Corsello Dep. at 207-213).  Again, HMD did not receive any real-time alerts or notification when the Netradyne system/algorithm sensed an "event".

<u>Plaintiff's Set IV Request Nos. 1, 9, 14 and 16</u>

5.     It is admitted that Plaintiff served HMD with Request for Production of Documents Set IV ("RPD Set IV") on or about May 10, 2022, and that Plaintiff's Motion to Compel is directed to Requests 1, 9, 14 and 16 of RPD Set IV.   RPD Set IV continued Plaintiff's abusive pattern of discovery. Since the inception of this personal injury case, **Plaintiff has served 182 separate requests for production of documents on HMD**, excluding subparts.   Throughout, HMD has endeavored to cooperate with reasonable discovery requests, despite that many sought information completely irrelevant to the claims or defenses in this case—i.e., a nighttime automobile accident in which one driver, Charles Kennedy, collided with Plaintiff's vehicle, telling the officer at the scene that he fell asleep. (Am. Compl. ¶¶ 20-21). The requests that are the subject of Plaintiff's Motion also fall into the category of irrelevance.

7.     (sic) Fed. R. Civ P. 26(b)(1) speaks for itself. It contains important limitations on the scope of permissible discovery, namely that parties may only "obtain discovery regarding any nonprivileged matter that is **relevant** to any party's claim or defense and **proportional to the needs of the case**, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The discovery rules provide a further limitation when ESI is requested:

*Specific Limitations on Electronically Stored Information.* **A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.** On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*See* Fed. R. Civ P. 26(b)(2)(B).

> Further,
>
> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) **the discovery sought is unreasonably cumulative or duplicative**, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> …
>
> (iii) the proposed discovery is **outside the scope permitted by Rule 26(b)(1).**

Fed. R. Civ P. 26(b)(2)(c).

8.    Denied as stated.  Plaintiff's representation that HMD produced no videos is misleading. In Request No. 1, Plaintiff requested "[a]ny and all documents, including but not limited to videos/dash cam videos from each angle . . ., relating to Defendant Charles Kennedy alerts or events . . . from October 2019 through September 24, 2020." In response, HMD produced all *57 Netradyne videos* regarding Defendant Kennedy for the week leading up to the accident (September 18, 2020 through September 24, 2020). HMD also produced other Netradyne data relating to Kennedy's tenure with HMD. This information included his driver scorecard for each month of his tenure with HMD along with a spreadsheet identifying all "alerts" documented by the Netradyne system while Kennedy was employed by HMD.

The additional videos from the 11 months preceding the accident Plaintiff requests are irrelevant, and Plaintiff's request is not proportional to the needs of the case and unduly burdensome.  Fed. R. Civ P. 26(b)(1). Kennedy stated that the accident occurred when he fell asleep. Plaintiff makes a conclusory statement that these videos will show that HMD had "knowledge of Mr. Kennedy's dangerous propensities."  But Plaintiff doesn't explain how, and they won't. As established during discovery, during the approximately 11 months Kennedy drove for HMD prior to the prior to the accident at issue, Kennedy was not involved in any accidents

6

involving other vehicles, was never known to have fallen asleep, and was not issued any citations. To the extent the additional 11 months of videos show periodic driving behavior that triggered a Netradyne "alert," that information would not have given HMD any indication that Kennedy would fall asleep at the wheel on September 24, 2020.

In addition to being irrelevant, Plaintiff's request for these videos (ESI) is not proportional to the needs of the case and unduly burdensome. Upon information and belief, there appears to be video for approximately 158 different "events" for Kennedy between October 2019 through September 2020 available to HMD in the Netradyne online interface.[3] Most "events" have multiple videos/angles. As such, complying with Plaintiff's request would be extremely burdensome, requiring manual download and renaming of **several hundred videos**—none of which have any probative value in this case. There is no simple way for HMD download all of the videos. Instead, HMD would need to manually search for each event by querying a date range (maximum of 30 days), then manually select each event within the date range. Then, the video(s) associated with the event would have to be manually downloaded one-by-one. Since Netradyne does not uniquely name the video files (they are titled "outward," "right," etc.), the file names would need to be manually changed to identify the "event" at issue. This search-download-rename process would take countless hours to complete. In short, the videos are accessible, but are not reasonably accessible due to the undue burden and cost of downloading them. Fed. R. Civ P. 26(b)(2)(B).

Further, these hundreds of videos would reveal nothing more than the Netradyne data HMD already produced. As discussed above, HMD has already produced a spreadsheet documenting each alert that the Netradyne system documented for Kennedy during his entire tenure at HMD (October 2019 to September 2020). The videos requested by Plaintiff would be unreasonably

---

[3] Many of these "events" reflect Netradyne's award of a "Driver Star" when the system deemed Kennedy to have done a "Great Job."

cumulative and duplicative of this information. Fed. R. Civ P. 26(b)(2)(c). HMD respectfully asserts that Plaintiff has been provided with all relevant information regarding Kennedy's performance while employed by HMD.

Additionally, Plaintiff's reliance on the cases cited in the Motion to Compel is misplaced. First, Plaintiff cites to *Sajda v. Brewton*, 265 F.R.D. 334, 340–41 (N.D. Ind. 2009), for the proposition that a defendant's accident reports are discoverable even if used to compile information for the DOT. However, *Sajda's* holding was much narrower than Plaintiff represents and only involved the production of one report. In *Sajda*, the defendant's driver was involved in a sideswipe hit-and-run accident. The driver phoned in a report the next day. Plaintiff sought discovery of the sideswipe report and defendant objected, raising work product and attorney-client privilege. The Court found that neither the work product privilege nor the attorney-client privileged applied and ordered the production of the single report. It did not compel production of records relating to incidents totally unconnected to the one at issue in the litigation.

Likewise, the holding in *Rogers v. Quality Carriers, Inc.*, No. 4:15-CV-22-JD-JEM, 2016 WL 11281169 (N.D. Ind. Nov. 15, 2016), involved the production of a single investigative report regarding the accident at issue in the case which had been redacted by defendant. It is not instructive.

Lastly, Fed. R. Civ. P. 26(c)(1)(B) permits this Court to "specify[] terms, including time and place or the allocation of expenses, for the disclosure or discovery[.]" To the extent that this Honorable Court allows Plaintiff to pursue this burdensome request for video relating to more than 150 irrelevant events, it should enter a protective order in favor of Defendants requiring Plaintiff to pay the attorneys' fees and expenses incurred as a result of the many hours that HMD's counsel will need to spend to download, label, organize, and produce the requested videos. *See*

*Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 334–35 (E.D. Pa. 2012) (allocating discovery costs to plaintiffs due to "asymmetrical discovery" where the class had "very few documents" while the defendant had "millions of documents and millions of items of electronically stored information").

9.      Denied.  In Request No. 9, Plaintiff seeks "[a]ny and all documents regarding any accidents involving sleeping and/or fatigue of a driver" for the five-year time period of September 25, 2015 to September 24, 2020. HMD's Safety Director during that period of time recalls no such accident. HMD has conducted a diligent review of records within its possession, custody, and control and has been unable to identify any other accident involving sleeping and/or fatigue of a driver during the requested time period.

Even if any such accident could be identified, Plaintiff's claims are based upon allegations that HMD negligently hired, retained and trained Defendant Kennedy and <u>only</u> Kennedy. Documents regarding accidents involving other drivers employed by HMD are not probative of whether HMD somehow negligently failed to prevent Kennedy from suddenly falling asleep.

Similarly, in Request No. 14, Plaintiff requested "[a]ny and all documents regarding any accidents" for three years prior to the date of the accident at issue in this case—i.e., September 25, 2017 to September 24, 2020. This request for three years of records regarding every accident involving vehicles owned or leased by HMD seeks information irrelevant to any claim or defense and the request is overbroad. For the reasons stated above, documents regarding accidents involving other drivers employed by HMD are not probative of whether HMD negligently entrusted its truck to Kennedy. Further, even if similar accidents involving sleeping or fatigued drivers had some relevance (again, none have been identified), Plaintiff has not explained how, for example, accidents not involving third parties, accidents caused by third parties, accidents that

9

were not preventable, or accidents involving speeding or ignoring a traffic sign or a side-swipe would help her prove her case about a driver fell asleep.

Further, it would be unduly burdensome for HMD to respond to this request. At the time of the accident, HMD had a fleet of over 200 drivers. HMD would have to review each accident file for the three-year period and remove privileged and non-responsive documents. This alone would take countless hours.

And the request is so vague it is unclear where HMD's obligation to produce "[a]ny and all documents regarding any accidents" would begin and end. Based on Plaintiff's arguments in her Motion, this request would presumably include all Netradyne videos for every driver involved an accident during the three-year period. The cost of this effort would be incalculable. Request No. 14 is clearly not proportional to Plaintiff's needs in this case given the irrelevance of the discovery in resolving the issues and the fact that the burden and expense of responding would greatly outweigh its minimal benefit. Fed. R. Civ. P. 26(b)(1).

Lastly, if this Honorable Court orders production of these documents, HMD requests a protective order requiring Plaintiff to pay the attorneys' fees and costs that will be incurred for producing the requested information. Fed. R. Civ. P. 26(c)(1)(B)

10.    Regarding Request No. 16, HMD previously produced the requested logs from 6.24.20 through 7.24.20.

WHEREFORE, Defendants respectfully request that this Honorable Court deny Plaintiff's Motion to Compel.

**FOWLER HIRTZEL MCNULTY &
SPAULDING, LLP**


By: _____

Dated: July 8, 2022                 MICHAEL F. SOCHA, ESQUIRE
                                    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Mallori A. Beiler, employee of Fowler Hirtzel McNulty & Spaulding do hereby state that a true and correct copy of the foregoing document was sent via ECF notification upon the following individual(s) on the date set forth below:

Michael McKarksi, Esquire
Mark Altemose, Esquire
Cohen, Feeley, Altemose & Rambo
2851 Baglyos Circle, Suite 200
Bethlehem, PA 18020
mmckarski@cohenfeeley.com
maltemose@cohenfeeley.com
*Counsel for Plaintiff*

John F. Fox, Jr., Esquire
Fox Law, P.C.
P.O. Box 220
Plymouth Meeting, PA 19462
JohnFox@JFoxLaw.com
*Co-Counsel for Defendant, Charles Kennedy*

**FOWLER HIRTZEL McNULTY &
SPAULDING, LLP**

Date: July 8, 2022                    By: _____

Mallori A. Beiler
1860 Charter Lane, Suite 201
Lancaster, PA 17601-5865
(717) 553-2600 ext. 306